STATE OF NORTH CAROLINA v. JOHN KENNEDY OLIVER, JR.

No. COA11-546

(Filed 6 December 2011)

**1. Motor Vehicles—unauthorized use—not a lesser-included offense of possession of stolen vehicle**

   Unauthorized use of a motor vehicle is not a lesser-included offense of possession of a stolen vehicle.

**2. Motor Vehicles—possession of stolen vehicle—knowledge of theft—evidence sufficient**

   The trial court did not err by denying defendant's motion to dismiss a charge of possession of a stolen vehicle where defendant argued that he did not have reason to believe the car was stolen. He contended that he had entered into numerous similar transactions in which drug addicts rented their vehicles to fund their habits, but the evidence allowed the jury to infer that defendant knew that the car was stolen.

Appeal by defendant from judgment entered 10 November 2010 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 27 October 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Sueanna P. Sumpter, for the State.*

*Gilda C. Rodriguez for defendant appellant.*

McCULLOUGH, Judge.

John Kennedy Oliver, Jr. ("defendant"), appeals from his conviction of possession of a stolen vehicle. Defendant pled guilty to habitual felon status and the trial court sentenced him to 77 to 102 months in prison. For the following reasons, we find no error.

STATE v. OLIVER

[217 N.C. App. 369 (2011)]

I. Background

Joseph Haubenhoffer initially noticed that his 2002 silver Audi A6 had been stolen around 10:00 a.m. on the morning of 11 December 2009. His car was not in his driveway where he had parked it and locked it the previous night, following his usual routine of eating dinner and walking his dogs with his wife. Upon his realization that his car had been stolen, Mr. Haubenhoffer called the police and his insurance company.

Officer Eric Riley responded to Mr. Haubenhoffer's call. Mr. Haubenhoffer told Officer Riley that the car had been there the night before and gave him a description of the vehicle. Mr. Haubenhoffer also told Officer Riley that he still had both sets of keys to the car and his wife was the only other person with permission to use the car.

After talking to Mr. Haubenhoffer, Officer Riley went to an area of Charlotte known for crack houses, where he had previously found stolen vehicles. He testified that some are found abandoned while others are found being driven. Once an officer attempts to pull over a stolen vehicle, the perpetrator usually takes off and ends up wrecking the vehicle. Around 1:00 p.m. on 11 December 2009, Officer Riley located the 2002 Audi. He pulled the car over and found defendant in the driver seat with two passengers. Defendant did not attempt to evade Officer Riley and there was no visible damage to the car. Defendant was operating the vehicle with a valet key, which is a plastic fabricated key. Defendant told Officer Riley that he did not have a driver's license, but produced an identification card. He also could not produce the registration, but said the vehicle belonged to somebody named Joe. Officer Riley subsequently arrested defendant.

Mr. Haubenhoffer received a call letting him know that his car had been found. Upon inspecting the car, he noticed that personal items were missing, the gas tank was empty, and the interior was covered with trash and cigarette butts. Also, he had never seen the valet key. At trial, Officer Riley testified he had seen people rent their cars at crack houses in exchange for money to buy crack cocaine. He further testified that sometimes when the cars are not returned on time they are reported stolen.

Detective Mark Michalec interviewed defendant and summarized the interview in a written statement, signed by defendant. According to the statement, defendant was hanging out in front of Urban Ministries with two friends around 11:00 p.m. or midnight on 10 December 2009

when a man known as "Left Eye" pulled up in a silver Audi, asking if anyone wanted to rent it. Defendant said he would, and Left Eye told him it belonged to a man named Joseph, with whom he worked. He showed defendant a registration with the name Joseph and a surname defendant could not pronounce. The two agreed that defendant would return the vehicle the next evening around 7:00 p.m., in front of Urban Ministries. After getting the car, defendant drove around with a friend and then went to his girlfriend's house.

The next morning, he drove by Urban Ministries around 9:00 a.m. looking for Left Eye. According to defendant's statement, at this point he thought the car was stolen, but at trial defendant testified he did not think the car was stolen until Detective Michalec suggested it. While at Urban Ministries, defendant saw two friends and agreed to give them a ride. Defendant planned on leaving the car at his aunt's house after dropping his friends off, but was stopped by police before doing so.

Marquis Teeter, a friend of defendant, testified that he was with defendant when he rented the car. They were sitting across from Urban Ministries when Left Eye pulled up in the Audi with a Caucasian passenger. Left Eye told defendant the car belonged to the passenger. Mr. Teeter did not think the car was stolen because they are often rented to buy crack. The car did not appear to be damaged and Left Eye had a key. That evening, Mr. Teeter drove around with defendant until defendant dropped him off at his hotel. Mr. Teeter ran into defendant the next morning and asked him for a ride to his mother's house, but on the way there they were stopped by police.

Defendant testified at trial to a similar story to the one in his statement and testified to by Mr. Teeter. Left Eye produced the registration and defendant agreed to rent the car for $50.00 until 7:00 p.m. the next day. Defendant dropped Left Eye and the Caucasian man off at a drug house, drove around with Mr. Teeter, and then went to his girlfriend's house. He denied looking for Left Eye the next morning and testified that he frequently went to Urban Ministries. He never thought the car was stolen because Left Eye had a key. He planned on seeing his aunt after dropping his girlfriend and Mr. Teeter off, but never had an intention of abandoning the vehicle. Defendant further testified that he did not read the whole statement prepared by Detective Michalec before signing it because he was "a little shook up" at the time.

Defendant had a long list of prior convictions, but none dealing with theft crimes. He was indicted by a grand jury on 4 January 2010. The indictment was amended on 1 March 2010 to update the description of the vehicle. At the same time he was indicted for being an habitual felon. He was tried on 8 November 2010. Defendant made a motion to dismiss at the end of the State's evidence, which was denied. Defendant renewed his motion at the end of all evidence and the trial court again denied it. A jury found him guilty of possession of a stolen motor vehicle and he pled guilty to being an habitual felon. On 10 November 2010, Judge Foust entered a judgment and commitment order sentencing defendant to 77 to 102 months in prison. Defendant gave oral notice of appeal in open court.

## II. Analysis

### A. Lesser included Offense

**[1]** Defendant raises two issues on appeal. Defendant's first issue is that the trial court erred in failing to instruct the jury on the alleged lesser included offense of unauthorized use of a motor vehicle. Defendant contends unauthorized use of a motor vehicle is a lesser included offense of possession of a stolen vehicle. We disagree.

> A trial court must give instructions on all lesser included offenses that are supported by the evidence, even in the absence of a special request for such an instruction; and the failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense.

*State v. Bumgarner*, 147 N.C. App. 409, 417, 556 S.E.2d 324, 330 (2001) (internal quotation marks and citation omitted). "As a lesser included offense, all of the essential elements of the lesser crime must also be essential elements included in the greater crime." *State v. Hinton*, 361 N.C. 207, 210, 639 S.E.2d 437, 439 (2007) (internal quotation marks and citation omitted). "However, when the State's evidence is positive as to every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged, the trial court is not required to submit and instruct the jury on any lesser included offense." *State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984).

Defendant contends all the essential elements of unauthorized use of a stolen vehicle are essential elements of possession of a stolen vehicle. During the pendency of defendant's appeal, our Supreme Court addressed this very issue of whether unauthorized use of a motor vehicle is a lesser included offense of possession of a

stolen vehicle. *See State v. Nickerson,* ___ N.C. ___, 715 S.E.2d 845 (2011). Due to our Supreme Court's recent decision, we see no need to further discuss this issue. *Id.* Consequently, the trial court did not err in not instructing the jury on the crime of unauthorized use of a stolen vehicle as it is not a lesser included offense of possession of a stolen vehicle.

B. Motion to Dismiss

**[2]** Defendant next argues the trial court erred in denying his motion to dismiss the charge of possession of a stolen vehicle. Defendant contends the State failed to prove that he knew or had reason to know that the car was stolen. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo." State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch,* 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

> Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, *taken singly or in combination,* satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Fritsch,* 351 N.C. at 379, 526 S.E.2d at 455 (quoting *State v. Barnes,* 334 N.C. 67, 75-76, 430 S.E.2d 914, 918-19 (1993)) (internal quotation marks and citations omitted).

Defendant argues that he did not have reason to believe the vehicle was stolen because he had entered into numerous similar trans-

actions in the past where drug addicts rented their vehicles to fund their habits. Defendant also notes that he did not run or attempt to evade police when pulled over and he actually had a key to the vehicle. He contends that "[w]hether [he] knew or should have known that the vehicle was stolen must necessarily be prove[n] through inferences to be drawn from the evidence." *State v. Baker*, 65 N.C. App. 430, 436, 310 S.E.2d 101, 107 (1983) (internal quotation marks and citation omitted). However, the evidence allows the jury to infer that defendant knew that the car was stolen. Defendant's signed statement states that he "drove to the Urban Ministries to see if [he] saw Left Eye. If [he] didn't see him [he] figured that [the car] was stolen. [He] didn't' see him there so it must have been stolen." Defendant was also found in the car and admitted to having driven it around for the night. Viewing the evidence in the light most favorable to the State, the evidence is sufficient to show the essential elements of the crime of possession of a stolen vehicle and for a jury to believe that defendant was the perpetrator of the crime. Therefore, the trial court did not err in denying defendant's motion to dismiss.

### III. Conclusion

Based on the foregoing, we find no error on behalf of the trial court. The crime of unauthorized use of a stolen vehicle is not a lesser included offense of the crime of possession of a stolen vehicle. Also, the State presented sufficient evidence for the issue to be presented to the jury.

No error.

Judges HUNTER, JR. and THIGPEN concur.